1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

CATHY ARMSTRONG, and OLUWA
FOSUDO, on behalf of themselves and all
others similarly situated,

                Plaintiffs,

v.

AMAZON.COM, INC.,

                Defendant.

Case No.

**COMPLAINT—CLASS ACTION**

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.305.7784

Plaintiffs Cathy Armstrong, and Oluwa Fosudo, individually and on behalf of all others similarly situated, by and through counsel, bring this action against defendant Amazon.com, Inc. Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of their counsel, and information and belief, as to all other matters.

## NATURE OF THE CASE

1.      Every year since 2015, mega-retailer Amazon invites consumers to enjoy steep discounts on products sold in its online storefront during a short window called "Amazon Prime Day." Amazon promises consumers that during the brief Prime Day window they can get "Amazon's best discounts of the year on millions of products from top brands," which in 2025 only lasted 96 hours.[1]

2.      In fact, Prime Day is rife with fake sales and misleading "percent off" claims, like "Prime Day Deal - 40%" or "44% off Prime Day Deal" (hereafter "Prime Day Percentage Discounts"). With these conspicuous Prime Day Percentage Discounts, examples of which are shown below, Amazon promises that, during Prime Day, the discounted products will be sold at a percentage off a purported prior price.




---

[1] https://www.aboutamazon.com/news/retail/prime-day-2025-deals

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

3.     Relying on these prominently advertised Prime Day Percentage Discounts that Amazon advertised as time limited by Prime Day, consumers entered into transactions with Amazon to buy consumer goods from Amazon during Prime Day, which, by 2025, Amazon had extended to four days.

4.     The problem is that, during Plaintiffs' and similarly situated purchasers' transactions, Amazon used a fictional "List Price" to calculate the Prime Day Percentage Discounts that Amazon promised as Prime Day Deals. For example, although the images above provide a "List Price" of $179.95, that price has not been Amazon's List Price for the pictured headphones for 90 days or more prior to the supposed Prime Day Deal, advertised as a 44% off savings. Instead, the "List Price" on Amazon has always been much lower than $179.95, ranging from $130 to $160. Amazon's "List Price" is thus an inflated fiction. As a result of a fake inflated "List Price" (hereafter the Fake Prior Amazon Price), Plaintiffs and purchasers like them did not obtain the Prime Day Percentage Discounts that Amazon promised them to draw them into the transaction, and that Plaintiffs factored into their purchasing decision. Because Amazon used a Fake Prior Amazon Price to calculate the Prime Day Percentage Discounts, Plaintiffs and other consumers like them paid more than they would have had the items truly been discounted (i.e., from the actual prior price) with the Prime Day Percentage Discounts that Amazon promised and that they relied on in the transaction. Indeed, also in furtherance of its scheme to lure consumers in with inflated percentage discounts, Amazon displays the Fake Prior Amazon Prices as ~~stricken through~~, to deceive reasonable consumers into believing that the products are typically sold at that price but are discounted for Prime Day.

5.     Contrary to Amazon's promises of Prime Day Deals with deep percentage discounts, for the transactions at issue here, the products in question were never sold, for the last 90 days if not longer, at the stricken through Fake Prior Amazon Price. The actual prior prices that should have been used to calculate percentage Prime Day Deals are often much lower—rendering the promised Prime Day Deal Percentage Discounts either much smaller than advertised or nonexistent.

6.     Amazon uses these fake Prime Day Percentage Discounts, offered under the extreme time pressure of the brief Prime Day window, to lure consumers to purchase products. And its tactics work.

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

Lured with the promise of deep discounts and huge percentages off—up to 70% in some cases—consumers flock to Amazon during Prime Day. In 2025, online spending increased by $24.1 billion during the stretch from July 8 to 11—in part because Prime Day fell in that window.[2] Amazon profits from its fraudulent advertising of fake Prime Day Percentage Discounts, which are calculated off the Fake Prior Amazon Price, by selling more products than it would absent the misleading Prime Day Percentage Discounts.

7.    While there is nothing wrong with a legitimate sale, a fake one based on a fake reference price is deceptive and misleading to reasonable consumers. It is also unfair. And it violates Washington's consumer protection laws, which prohibit "unfair methods of competition and unfair or deceptive acts or practices." *See* Wash. Rev. Code § 19.86.020.

8.    Plaintiffs Armstrong, and Fosudo bought products from Amazon during Prime Day in 2025, relying on the belief that they were getting Prime Day Percentage Discounts. In fact, the purported discounts weren't real or were inflated because Amazon used an inflated Fake Prior Amazon Price to calculate the percentage off at the end of transaction. Had Amazon been truthful that the Prime Day Deals did not in fact have the percentage discount represented based on the actual price offered on Amazon during the last 90 days, Plaintiffs would not have purchased the products they bought during Prime Day, or would have paid less for them. But for Amazon's false and misleading representations, Plaintiffs would also have shopped around for better prices in the marketplace or waited to purchase the items at a better price. Accordingly, Plaintiffs bring this action for themselves and all others similarly situated who were duped by Amazon's fake Prime Day sales.

---

[2]    https://www.reuters.com/business/retail-consumer/us-online-spending-surges-241-billion-steep-discounts-boost-sales-adobe-says-2025-07-12/

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

1

**THE PARTIES**

2
9.      Plaintiff Cathy Armstrong is a citizen and resident of California.

3
10.     Plaintiff Oluwa Fosudo is a citizen and resident of Maryland.

4
11.     Defendant Amazon.com, Inc. is a Delaware corporation with its principal office of 410

5
Terry Avenue N., Seattle, WA 98109.

6
**JURISDICTION AND VENUE**

7
12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28

8
U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of

9
$5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at

10
least one putative class member is from a state different from the Defendant.

11
13.     This Court has personal jurisdiction over Defendant because it maintains a principal place

12
of business in this District.

13
14.     Venue is proper in this judicial district under 28 U.S.C § 1391 because Defendant resides

14
in this District.

15
**FACTS COMMON TO THE CLASS**

16
**A.      Amazon uses fake Prime Day Deals to mislead consumers.**

17
15.     Amazon's Prime Day sales event is a marketing ploy that Amazon uses to boost its sales

18
and its profits annually. Amazon advertises Prime Day to Prime members as a brief, time-limited sales

19
event during which Prime members can access "exclusive deals." Amazon describes Prime Day as "a

20
sale event exclusively for Prime members," which "features exclusive deals on a variety of products and

21
brands across popular product categories."[3]

22
16.     The first Prime Day launched in 2015; during the 24-hour event, customers ordered more

23
than 24.4 million items, including hundreds of thousands of Amazon Devices.[4] In 2024, Amazon sold

24

25
_____

26
[3] https://www.aboutamazon.com/news/retail/when-is-amazon-prime-day.

27
[4] https://www.aboutamazon.com/news/retail/the-history-of-prime-day

1

CLASS ACTION COMPLAINT

28
**WYATT GRONSKI**
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

over 200 million items on Prime Day. And in 2025, with the length of the event extended to four days, Amazon sold nearly $24.1 billion during Prime Day alone.[5]

17.    But many of the "exclusive deals" that Amazon touts during its Prime Day sales event are not deals at all. Amazon promises that, during Prime Day, products are sold at a particular percentage off ("Prime Day Percentage Discounts"). In fact, in the instances at issue here, Amazon used a Fake Prior Amazon Price to calculate the Prime Day Percentage Discounts that it featured prominently in the transaction—rending it deceptive and misleading. For these purchases, the products purportedly on sale during Prime Day were not sold on Amazon at the strike through price listed used to calculate the misleading Prime Day Percentage Discounts for at least 90 days prior, if not longer. As they are calculated by Amazon using a Fake Prior Amazon Price, instead of the price the goods were actually sold at on Amazon prior to Prime Day, the Prime Day Percentage Discounts that Amazon advertises, therefore, are false and misleading to reasonable consumers like Plaintiffs who entered the transactions in reliance on the misleading Prime Day Percentage Discounts that were advertised as special Prime Day Deals.

### B.    There are numerous examples of Amazon's fake sales.

18.    The misleading Prime Day Percentage Discounts at issue permeated Amazon's 2025 Prime Day advertising during the four-day long Amazon Prime Day event, which lasted from July 8 to July 11, 2025.

19.    In the follow example documented on July 10, 2025, Amazon advertised a "40% off Prime Day Deal" on a Kids Tablet.

---

[5] https://www.retaildive.com/news/amazon-prime-day-2025-record-sales/753034/

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT



WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

20.     After drawing customers in with its promise of "40% off" advertised as a "Prime Day Deal," when the customer clicks on the tablet Amazon again emphasizes in red that it is a "Prime Day Deal -40%."



21.     But Amazon's 40% off price is false and misleading because it is derived from a fake "List Price" (*i.e.* the Fake Prior Amazon Price). In other words, while Amazon claims that the "List Price" of the item is "$119.99" and uses that to calculate the 40% off savings it promises, that List Price is fake because Amazon never actually listed it at that price for the prior 90 days. Instead of listing at "119.99" like it claims in its misleading strikethrough advertising, Amazon offered the tablet for between $50 and $85, with a median price of around $72 during the prior 90 days. Thus, the price of $72.18, which was

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

supposedly a time-limited Prime Day Deal, was actually higher than the $50 price that Amazon offered it for in April, and closer to the price that the tablet is usually offered for on Amazon. Thus, Amazon's 40% Prime Day deal was in fact no deal at all—instead deceiving and misleading consumers into believing they were getting a promised 40% discount specially for Prime Day, when in fact they were paying the usual price of the item.

22.    In another example documented on July 10, 2025, Amazon advertised Skullcandy headphones as "Prime Exclusive Savings," stating in bright red "41% off Prime Day Deal" to draw consumers to click on the headphones and start down the path to purchase:



CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

23.     Upon clicking on the headphones, Amazon again emphasizes a "Prime Day Deal -44%." Then, as shown below, even when a user selects the headphones, Amazon continues to emphasize the "Prime Day Deal -44%":



24.     But, in fact, Amazon does not deliver the promised 44% off because it uses a Fake Prior Amazon Price in calculating 44% supposed savings. While Amazon lists a Fake Prior Amazon Price of $134.99, in fact, these Skullcandy headphones have often been offered at the same "sale" price during the past 90 days, and never cost more than $110. Indeed, Amazon's supposedly special deal price was in fact the price it was offered on Amazon for most of March and April—contrary to Amazon's representation of special time limited percentage Prime Day Deals. Thus, contrary to Amazon's promise that the price of $75.99 is a 44% off Prime Day Deal, instead, that is just the price at which Amazon usually sells the headphones. As the headphones were never offered on Amazon for the fake strike through price of $134.99, a customer buying these headphones during Prime Day 2025 overpaid because

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

Amazon did not deliver the 44% savings it promised. Amazon did not use the real price the item is usually

available for on Amazon in calculating that percentage at the end of the transaction.

25.     In yet another example, during Prime Day on July 10, 2025, Amazon advertised a DASH

Tasti-Crisp Air Fryer as a "Prime Day Deal" on sale for "40% off"—specifically, Amazon falsely

represented that the DASH Tasti-Crisp Air Fryer was "40%" off of a List Price—the Fake Prior Amazon

Price—of $59.99:




26.     In fact, though, Amazon had not sold the TASH Tasti-Crisp Air Fryer for $59.99 within

the 90 days preceding Prime Day. Actually, Amazon had not sold the TASH Tasti-Crisp Air Fryer for

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

$59.99 within the entire *year* preceding Prime Day. The highest price Amazon sold the TASH Tasti-Crisp Air Fryer during that period was $49.99. Thus, its advertised 40% off was misleading; in fact, the product was only on sale for 28% off the price the item is usually available for on Amazon. For the 40% off Prime Day Percentage Discount to be true, Amazon would have needed to sell it for $29.99, not $35.99. Since Amazon promised 40% off, but only gave 28% off the real Amazon price, purchasers of this item did not get the full benefit of the 40% Prime Day Percentage Discount that Amazon promised purchasers to draw consumers into the transaction with its special, supposedly time-limited Prime Day Deal. Amazon thus overcharged purchasers of this item during Prime Day by failing to use the real price the item was available for on Amazon before Prime Day 2025 to calculate the Prime Day Percentage Discounts it promised.

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

27.    In another example, documented on July 9, 2025, Amazon advertised a children's chef costume as 37% off. But, in calculating that Prime Day Percentage Discount, Amazon used a Fake Prior Amazon Price of $37.99:




28.    In fact, Amazon had not sold the chef costume at the Fake Prior Amazon Price during the preceding 90 days, and therefore, the advertised 37% Prime Day Percentage Discount was deceptive and misleading. In contrast to the strike through $37.99 Prime Day Percentage Discount, the highest price that Amazon had offered the chef costume during that period was $33.79, so the actual discount the highest price was only 30%. For the advertised 37% Prime Day Percentage Discount to be true based on the actual prices listed on Amazon prior to Prime Day, Amazon should have sold the chef costume for

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

$21.29. As Amazon promised a 37% discount as a Prime Day Deal, not a 30% discount, Amazon owes purchasers of this item around $10 for them to have the the benefit of the 37% Prime Day Percentage Discount that Amazon promised to draw consumers into purchasing the children's item on Amazon during Prime Day.

29.  Amazon uses these misleading Prime Day Percentage Discounts to lure consumers to purchase products they would not otherwise purchase, or spend more money than they would otherwise spend.

30.  Amazon knows based on years of data collected on its platform during Prime Days and year round (i) that consumers love deals, (ii) that they are drawn in by Prime Day Percentage Discounts, (iii) that they convert to purchase more often the deeper the Prime Day Percentage Discount, and, (iv) that, therefore, large savings like 37%, 34%, and 40% off Prime Day Percentage Discount lure consumers to buy more items and/or at higher prices on Amazon than they otherwise would have. But for those Prime Day Percentage Discounts to be real they would have to be based on the actual list prices on Amazon prior to Prime Day—rather than being based on the Fake Amazon List Price that Amazon uses to create misleading discounts. Amazon engages in this scheme where it lures customers in with misleading Prime Day Percentage Discounts during a time-limited Prime Day window to increase its bottom line at the expense of consumers.

31.  Amazon elects to use misleadingly inflated Prime Day Percentage Discounts instead of offering real percentage discounts calculated using real Amazon prices prior to Prime Day because, if it used the real prior Amazon prices to calculate the Prime Day Percentage Discount but still offered the same deep percentage discounts as Prime Deals, Amazon would have to offer products at even lower prices, reducing its profit margin. To avoid actually conferring promised sales, Amazon simply advertises misleadingly inflated Prime Day Percentage Discounts that are based on the Fake Prior Amazon Price— a made up number. By prominently advertising Prime Day Percentage Discounts that are based on the Fake Prior Amazon Price, Amazon misleads consumers to believe they are saving more money than they

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

actually are, which it knows from ten years of having annual Prime Day promotional events cause more consumers to buy more items.

32.     The (i) button next to the striken through image of the Fake Prior Amazon Prices does not clarify matters. For one thing, to see the information hidden there, a consumer must click the button. If they do click the button, Amazon will display a disclaimer stating that "Amazon will display a List Price if the product was purcahsed by customers on Amazon … at or above the List Price in at least the past 90 days." But the advertised Fake Prior Amazon Prices were not used by Amazon for more than 90 days for each product marketed as discounted during Prime Day.

33.     And in many instances, even when Amazon *does* occasionally sell a particular product at the Fake Prior Amazon Price, it is only for an extremely short period—in some instances as short as literally one day. Amazon conducts these short spikes solely to try to make the stricken through Fake Prior Amazon Prices literally true, even if, in practice, consumers are deceived by Amazon's omission of the material fact that the referenced prices were only available for a very short period of time, and are, in fact, usually are available at a price more similar to the price offered as a Prime Day Deal.

34.     Using these tactics, Amazon leads reasonable consumers to believe that they are getting the advertised Prime Day Percentage Discounts on products purchased during the time-limited Prime Day promotion. Amazon knows that customers will be drawn in by its misleading Prime Day Percentage Discounts that are based on the Fake Prior Amazon Price and that they will factor in that Prime Day Percentage Discount in their decision to buy items they would not otherwise purchase if there were no limited Prime Day Deal. Amazon creates a false sense of urgency: buy now, during Prime Day, and you will receive something worth more than you paid for it; if you wait, and you'll pay more for the same thing later. Reasonable consumers believe that the by purchasing during Prime Day they will realize the promised deep Prime Day Percentage Discounts advertised as Prime Day Deals and that the Fake Prior Amazon Prices, which are stricken through adgacent to the Prime Day Percentage Discount avertising, represent the amounts that consumers usually have to pay for products sold on Amazon, and will need to pay again after Prime Day ends.

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

35.    Amazon is a repeat and willful offender. In March 2021, the Superior Court for the State of California entered a Final Judgment ("2021 Final Judgment") enjoining and restraining Amazon from doing anything in connection with the advertising of any advertised reference price ("ARP") that "results in the ARP being false or misleading in any particular, or results in the ARP having the tendency or capacity to deceive or mislead." The 2021 Final Judgment specified that "false and misleading" and "having the tendency or capacity to deceive or mislead shall mean … [u]sing the ARP nomenclature 'List Price' or some other marketing term such as 'Retail Price' in order to indicate a price provided to Defendants by a third-party such as a manufacturer, supplier or seller … unless (1) a clear and conspicuous hyperlink links to a clear and exact definition of the term, as used by Defendants in their advertising." *Id.*  The Final Order also enjoined Amazon from "[a]dvertising an ARP for longer than the timeframe in the definition of the ARP."  Amazon brazenly used List Prices while the 2021 Final Judgment was in effect that did not meet Amazon's own definition of what the List Price meant, and "for longer than the timeframe in the definition of the ARP."  In effect, Amazon has stipulated that the acts and practices at issue here are "false and misleading" and had the "tendency or capacity to deceive or mislead." The injunction was in effect through April of 2024. Amazon's advertising as described herein is explicitly false and misleading.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### A.  Cynthia Armstrong

36.    Plaintiff Cynthia Armstrong is a California resident and a member of Amazon Prime.

37.    During Amazon Prime Day, Ms. Armstrong searched for the ChoseBe Cordless model vacuum that she had had her eye on. During the Prime Day Promotion, she saw it with a strikethrough price of $199.99 and a 60% off Prime Day deal price of $79.99. Believing she was receiving a significant discount; Cathy purchased the vacuum. In purchasing the vacuum, the 60% discount that Amazon advertised during Prime Day was a substantial factor in her decision to purchase the vacuum.

38.    Ms. Armstrong believed she was receiving a 60% discount on the vacuum and purchased it for the price of $79.99. Ms. Armstrong saw and reviewed the advertisement that the vacuum was

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

marked down from $199.99. Based on Amazon's advertising, she believed at the time of sale that the vacuum was being sold for a discount off its retail or regular market price as a part of Prime Day, and if she waited to purchase it, she would have to pay more.

39.    Based on Amazon's representations, Ms. Armstrong reasonably understood that the product she was purchasing was regularly sold at $199.99 and that she was getting it for the advertised 60% off.

40.    A week after her purchase, Ms. Armstrong returned to Amazon and found that the vacuum was now being sold for $79.99, marked down 20% from a new Fake Prior Amazon Price of $99.99.

41.    Ms. Armstrong called to complain that she thought she had purchased a $199.99 vacuum for $79, and instead had purchased a $99 vacuum for $79, and she felt bamboozled.

42.    In fact, the ChoseBe Cordless vacuum that Ms. Armstrong purchased was not sold at $99.99 or $199.99 during the ninety-day period prior to Ms. Armstrong's purchase; rather, it is always available on Amazon at $79.99.

43.    Had Ms. Armstrong known that the product was not discounted as advertised and that she was not receiving the promised discount, she would not have made the purchase.

44.    Ms. Armstrong would purchase for-sale products from Amazon again if she could be certain that Amazon's promised discounts were accurate and real markdowns from the stated prior prices. But without an injunction requiring Amazon to tell the truth about its prior prices, Ms. Armstrong has no way to know which of the Amazon Prior Prices are real and which ones are made up

**B.    Oluwa Fosudo**

45.    Oluwa Fosudo is a Maryland resident and a member of Amazon Prime.

46.    During the 2025 Amazon Prime Day event, Ms. Fosudo purchased a product called Neuriva Brain 30 Capsules, which was advertised as 12% off. Amazon also included a strike through "List Price" of a Fake Prior Amazon Price of $44.99. Because of the percentage savings advertised during Prime Day, she purchased the Neuriva Brain 30 Capsules. She paid $39.91 for the product.

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

47.     Based on Amazon's advertising of a percentage discount in connection with Prime Day, she believed at the time of sale that the Neuriva Brain 30 Capsules product she was purchasing was being sold for a discount off its retail or regular market price as part of Prime Day, and if she waited to purchase it, she would have to pay more.

48.     Based on Amazon's representations, Ms. Fosudo reasonably understood that the product she was purchasing was regularly sold at $44.99 and that she was getting it for the advertised discount.

49.     In fact, the product was not marked down from the Fake Prior Amazon Price, because Amazon had not sold the Neuriva Brain product at $44.99 for the ninety days preceding Ms. Fosudo's sale—or ever. Since Amazon used a Fake Amazon List Price to calculate the percentage discount it promised her and as part of Prime Day, and that she relied on in entering the transaction, Ms. Fosudo did not obtain the 12% off that she was promised. If she had realized a 12% savings from the real list price that the product had actually been usually offered for on Amazon (i.e. an average price of $33.32, the "real" reference price) the product should have cost her $29.32 to realize the benefit of the 12% Prime Day Deal. Because Amazon promised her a 12% discount it did not deliver, it owes her the difference between its promise that she would save 12% using the real reference price and the amount she actually paid calculated using the Fake Amazon List Price.

50.     Had Ms. Fosudo known that the product was not discounted as advertised and that she was not receiving the promised discount, she would not have made the purchase.

51.     Ms. Fosudo would purchase for-sale products from Amazon during Prime Day again if she could be certain that Amazon's promised discounts were accurate and real markdowns from the stated prior prices. But without an injunction requiring Amazon to tell the truth about its prior prices, Ms. Fosudo has no way to know which of the Amazon Prior Prices are real and which ones are made up.

## CHOICE OF LAW ALLEGATIONS

52.     Amazon's website has a choice of law and choice of venue clause in a contract entitled "Conditions of Use." Every product at issue here is subject to Amazon's choice of law and choice of

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

venue clause, requiring the application of Washington law to this dispute, and for any dispute to be brought in this Court.

53.    Accordingly, Washington law should apply to this dispute.

### CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

55.    Plaintiff seeks to represent the following <u>Nationwide Class</u>: All persons in the United States who, within the applicable statute of limitations, were Prime Members and purchased a product during Amazon Prime Day that was advertised with a percentage discount that was based on a stricken through reference price, when the product had not been sold at that reference price within the prior 90 days.

56.    The Nationwide Class will be referred to collectively as the "Class." Excluded from the Class are Defendant, any affiliate, parent, or subsidiary of Defendant, any entity in which Defendant has a controlling interest, any officer or director of Defendant, and any judge to whom this case is assigned.

57.    ***Numerosity:*** Members of the Class(es) are so numerous that joinder of all members is impracticable. It is estimated that there are tens or hundreds of millions of individuals in the Class. The identity of such membership is readily ascertainable from Defendant's records and non-party records.

58.    ***Commonality and Predominance***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

      a.    Whether Defendant made false or misleading statements of fact in their advertising;

      b.    Whether Defendant made misleading omissions of fact in their advertising;

      c.    Whether Defendant violated Washington's consumer protection statutes;

      d.    Whether Defendant violated contracts with the Class;

      e.    Whether Washington law applies to the Class's claims;

      f.    Whether Defendant was unjustly enriched; and

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

g. Whether Plaintiff and the Class Members are entitled to damages, the measure of damages, statutory damages, or other relief.

59. **Typicality**: Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all members of the Class(es) were injured through the common misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class(es).

60. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the other Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and intends to prosecute this action vigorously.

61. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

62. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources. The costs of individual suits

CLASS ACTION COMPLAINT

**WYATT GRONSKI**
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

could unreasonably consume the amounts that would be recovered. Further, proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged, and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

63.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and (alternative) state classes before the Court determines whether certification is appropriate and as the parties engage in discovery.

64.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

65.    Individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class Members are likely in the millions of dollars, the individual damages incurred by each Class Member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate claims is remote, and even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

66.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

67.    Plaintiff does not anticipate any difficulty in the management of this litigation.

### FIRST CLAIM FOR RELIEF
**Violations of the Washington Consumer Protection Act, RCW Ch. 19.86**
**(By Plaintiff on Behalf of the Nationwide Class)**

68.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

69.    Plaintiffs bring this cause of action individually and on behalf of the Class.

70.    By the practices described herein, Defendant has violated the Washington Consumer Protection Act (CPA), RCW Ch. 19.86.

71.    Section 19.86.020 of the CPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

72.    Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 1986.090

73.    Defendant engages in the conduct of trade or commerce within the meaning of the CPA by selling products that directly and indirectly affect consumers nationwide and by requiring consumers, including Plaintiffs, to agree to a choice of law provision requiring application of Washington law to this dispute.

74.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in their advertisements to Class members, constituting acts of unfair methods of competition and/or unfair or deceptive acts or practices

---

CLASS ACTION COMPLAINT

**WYATT GRONSKI**
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

75.     As described above, Defendant committed unfair acts by falsely advertising that products were on sale marked down from a Fake Prior Amazon Price, that the sale was limited in time, that the products had higher regular prices used within the last ninety days, and that customers were receiving the promised discounts, when that was false. This caused Plaintiffs and the Class to make purchases they would not have otherwise made, pay more for their purchases, and lose their expectancy interest in receiving the advertised products at the promised discounts.

76.     The harm to consumers from this conduct outweighs any utility in Defendant's conduct as there is no public utility in misrepresenting prices. Rather, Amazon's practices described herein harm competition.

77.     Defendant's representations were likely to deceive and did deceive Plaintiffs and the Class, who are reasonable consumers. Defendants knew or should have known through exercise of reasonable care that their promised fake discounts were inaccurate and misleading.

78.     Defendant's misrepresentations were intended to and did induce reliance. Class reliance can be inferred because Defendant's misrepresentations and omissions were material.

79.     Plaintiffs and the Class were injured due to Amazon's conduct because they would not have purchased the products they purchased had thye known the truth, they overpaid for them because they were sold at a price premium due to the misrepresentations and omissions, and they did not receive promised discounts.

80.     Defendant's acts or omissions are injurious to the public interest and are part of a pattern of unfair and deceptive advertisements that have injured other persons and have the capacity to injure additional persons

81.     Plaintiffs would purchase products from Amazon on Prime Day in the future if they could be assured that any promised markdowns were made from authentic prior prices and were true.

CLASS ACTION COMPLAINT

**WYATT GRONSKI**
PLLC

ATTORNEYS

540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

**SECOND CLAIM FOR RELIEF**
**Breach of Contract under Washington law**
**(By Plaintiff on Behalf of the Nationwide Class)**

82.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

83.     Plaintiffs bring this action individually and on behalf of the Class.

84.     Plaintiffs and Class members entered into contracts when they placed orders with Amazon on Prime Day. The contracts provided that Amazon would provide specific promised markdowns of specific percentages off the price at which the products are ordinarily sold. Plaintiff and the Class members paid Amazon and satisfied all other conditions of their contracts.

85.     Defendant breached its contracts with Plaintiffs and the Class members by failing to provide the promised discounts, in that the products were marked down from Fake Prior Amazon Prices at which the products had not been sold, instead of marked down the promised percentages from the actual prior prices.

86.     This practice also breached the implied covenant of good faith and fair dealing, as the discretion to display truthful or false prior prices is within Amazon's sole discretion, and Amazon exercised that discretion to mislead and deceive Plaintiffs and the Class.

87.     As a direct and proximate result of Amazon's breaches, Plaintiffs and the Class were deprived of the benefit of their bargain and suffered damages.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(By Plaintiff on Behalf of the Nationwide Class)**

88.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

89.     Plaintiffs bring this cause of action in the alternative to Count II, individually and on behalf of the Class.

90.     As described above, Defendant's practices caused Plaintiffs and the Class to purchase products at a price premium, conferring an unjust and direct benefit on Defendant at their expense.

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC
ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

91.    It would be unjust to permit Defendant to keep the benefits obtained through deceit and misrepresentation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of themselves and all others similarly situated, respectfully request that this Court:

a.    Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying the Class;

b.    Appoint Plaintiffs as representatives of the Class;

c.    Appoint Plaintiffs' counsel whose appearance is noticed herein as Class Counsel;

d.    Award all actual, general, special, incidental, statutory, punitive, exemplary, and consequential damages and restitution to which Plaintiffs and Class Members are entitled in an amount to be determined at trial and require Defendant to disgorge its ill-gotten gains;

e.    Award pre-judgment and post-judgment interest on such monetary relief at the highest legal rate to the extent provided by law;

f.    Grant appropriate injunctive and/or declaratory relief;

g.    Award reasonable attorneys' fees and costs to the extent provided by law; and

h.    Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  September 22, 2025                                Respectfully submitted,


                                                          _/s/    Todd Wyatt_____

                                                          **WYATT GRONSKI PLLC**
                                                          Todd Wyatt (Bar No. 31608)
                                                          540 Newport Way NW, Suite 200
                                                          Issaquah, WA 98027
                                                          Phone: 425-395-7784

21

CLASS ACTION COMPLAINT

WYATT GRONSKI
PLLC

ATTORNEYS
540 Newport Way NW, Suite 200
Issaquah, WA 98027
425.395.7784

E-Mail: todd@wdlawgroup.com

Katherine M. Aizpuru*
*kaizpuru@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900

Annick M. Persinger*
*Apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 948-3319

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (Cal. Bar No. 295032)*
28 Geary Street, Ste. 650 # 1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (Cal. Bar No. 244902)*
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*pro hac vice to be filed*

22

CLASS ACTION COMPLAINT

**WYATT GRONSKI**
PLLC
ATTORNEYS
540 Newport Way NW,Suite 200
Issaquah,WA 98027
425.395.7784